IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DOUGLAS DAMON WHITLEY and KINDAL )<br>ROBINSON, )<br>)<br>Defendants. )<br>) | 1:21-cr-227 (LMB) |

MEMORANDUM OPINION

Before the Court is a Motion for Judgment of Acquittal and for a New Trial filed by defendant Kindal Robinson ("Robinson") and an Amended Renewed Motion for Judgment of Acquittal and Memorandum in Support filed by defendant Douglas Damon Whitley ("Whitley"). [Dkt. Nos. 71, 74]. This Memorandum Opinion supplements the ruling made in open court on May 24, 2022, which granted Robinson's motion as to Count II but denied it as to Count I, and which denied Whitley's motion in all respects.

I. BACKGROUND

A. **Factual Background**

The evidence at trial, viewed in the light most favorable to the government, showed the following. Around 6:18 a.m. on August 25, 2021, Whitley and Robinson, who reside together and have an infant child, left their Washington, D.C. apartment. [Dkt. No. 65] at 78:20-80:18.[1] Whitley was wearing a white t-shirt and carrying a gray bookbag. [Dkt. No. 66] at 37:21-38:19. Robinson, who had brought their infant child with them, drove the three of them in a black

---

[1] References to the trial transcript are indicated by the transcript's docket number followed by page and line numbers, separated by a colon.

Toyota Camry registered to her mother into the Alexandria area of Fairfax County. [Dkt. No. 65] at 80:6-18; [Dkt. No. 66] at 27:19-28:10, 33:2-4. Records from Robinson's phone placed her across the street from a Peloton warehouse in Alexandria around 7:17 a.m. [Dkt. No. 65] at 103:25-106:4; [Dkt. No. 66] at 44:5-23. Shortly before 7:45 a.m., a Peloton van with Maryland license plates left that same warehouse. [Dkt. No. 65] at 8:1-3, 136:10-11. Two Peloton employees were in the van: Brandon Hawkins was driving, and Leonel Munoz was in the passenger seat. Id. at 7:8-9. The van was loaded with eight Peloton bikes and assorted Peloton products that Hawkins and Munoz were scheduled to deliver throughout the Washington, D.C. metropolitan area that day. Id. at 5:9-6:14.

Around 7:45 a.m., the Peloton van pulled into the parking lot of a nearby strip mall in Fairfax County, with the black Toyota Camry following closely behind. Id. at 62:13-23; [Dkt. No. 66] at 21:19-24, 56:12-15. After the Peloton van had parked, Munoz exited and walked into a 7-Eleven to get breakfast, while Hawkins stayed inside the van. [Dkt. No. 65] at 8:4-24. Meanwhile, the black Toyota Camry drove through the parking lot and came to a stop behind the Peloton van. Id. at 62:24-63:4. While Munoz was in the 7-Eleven, Whitley exited from the passenger seat of the black Toyota Camry and approached the Peloton van from behind. Id. at 66:17-23. According to Hawkins, a man, who he described as wearing a white t-shirt, bucket hat, and camouflage gaiter over his nose and mouth, opened the front passenger-side door, got into the van, pulled a gun-metal gray firearm with a 20-round magazine out of a gray bookbag, pointed the firearm at Hawkins's torso, and said, "don't touch anything" and "get the fuck out the van."[2] Id. at 8:14-10:6, 14:10-15:21. Hawkins immediately got out of the van and walked towards a nearby Wells Fargo because, according to Hawkins, he suspected it would have

---

[2] Hawkins specifically identified the firearm as a "TEC-9." [Dkt. No. 65] at 9:20-22.

surveillance cameras, and "if anything was to happen to me, I would want it to be on camera. . . . Just so my family would have some type of closure." Id. at 10:7-18. At this point, the black Toyota Camry drove out of the parking lot, and the Peloton van—now driven by the man in the bucket hat—followed it. Id. at 63:5-64:2.

Meanwhile, Hawkins met Munoz at the 7-Eleven and told him that "somebody stole the van." Id. at 42:12-44:19. Hawkins and Munoz then began walking back to the warehouse, which was about a mile and a half away. Id. at 12:3-6. After arriving at the warehouse, Hawkins immediately reported the incident to management, who then called the police. Id. at 13:5-13. Detective Guckenberger, the lead detective, arrived at the warehouse by 9:00 a.m., after which he interviewed Hawkins, who told him that the suspect had worn a white shirt, dark bucket hat, and camouflage gaiter. [Dkt. No. 66] at 21:19-26:1.

Fairfax County police officers identified the license plate of the black Toyota Camry from the surveillance footage of a nearby business and traced the car to Robinson's mother. [Dkt. No. 65] at 68:18-70:10; [Dkt. No. 66] at 27:19-28:10, 33:2-4. When interviewed the next day at defendants' apartment, Robinson admitted that she had driven the black Toyota Camry in the area of the 7-Eleven parking lot the day before. [Dkt. No. 66] at 32:23-33:1. Whitley was present in the apartment during the interview and was wearing a camouflage gaiter similar to the one Hawkins described. [Dkt. No. 65] at 76:6-20; [Dkt. No. 66] at 93:8-94:2. A bucket hat similar to the one Hawkins described was found in the trunk of the Camry that had been parked in the apartment building's parking lot. [Dkt. No. 66] at 32:23-33:8, 93:20-24. The empty Peloton van was eventually found in Upper Marlboro, Maryland, but a gun was never recovered, and no fingerprint or DNA evidence was introduced at trial. [Dkt. No. 65] at 139:3-15; [Dkt. No.

3

66] at 52:2-3. Some of the stolen Peloton bikes were sold over the internet to unwitting purchasers. [Dkt. No. 66] at 97:14-22.

## B. Procedural History

On October 13, 2021, a grand jury returned a three-count indictment charging Whitley and Robinson with Obstructing Commerce by Robbery ("Hobbs Act robbery") in violation of 18 U.S.C. §§ 1951(a) and 2 (Count I) and Carjacking in violation of 18 U.S.C. §§ 2119 and 2 (Count II). Whitley alone was charged with Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count III). Whitley and Robinson both pleaded not guilty. On February 18, 2022, after a two-day jury trial, a jury convicted both defendants of all counts.[3]

## II. DISCUSSION

### A. Standard of Review

When considering a defendant's motion for judgment of acquittal, a court must determine "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. Eychaner, 326 F. Supp. 3d 76, 85 (E.D. Va. 2018) (quoting United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982)). The motion must be denied if "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." Id. (quoting United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993)).

---

[3] In finding Whitley guilty of the brandishing charge, the jury answered five questions requested by defense counsel—specifically answering that they unanimously found that Whitley used, carried, and brandished a firearm in connection with both the Hobbs Act robbery and carjacking charges. [Dkt. No. 61].

4

B. **Analysis**

1. Robinson's Motion

Robinson, who was convicted for aiding and abetting Whitley, challenges her convictions on two grounds. First, she focuses on the intent element of aiding-and-abetting liability, which requires a defendant to "intend to aid the charged crime, and it is not enough to intend to further a different or lesser offense." United States v. Moody, 2 F.4th 180, 190 (4th Cir. 2021). She argues that there was no evidence presented showing that she intended Whitley to use force or violence when taking the van and therefore no evidence to find that she intended Whitley to commit either a robbery or carjacking. Instead, she argues that she could have simply intended Whitley to commit the lesser offense of larceny—i.e., to take the van without force or violence.

Although the government did not respond to Robinson's argument, the argument is nonetheless unpersuasive as to the Hobbs Act robbery count because it fails to view the evidence in the light most favorable to the prosecution. Viewed through that lens, the evidence showed that Robinson drove Whitley to the Peloton warehouse, waited with Whitley until the target Peloton van left, and then followed the Peloton van to the 7-Eleven parking lot where she pulled her car around and behind the van after it parked. From these facts, it would also have been reasonable to infer that Robinson knew someone was still in the van, given (1) that she pulled behind the van as if to help Whitley approach it while undetected by anyone inside it, which would not have been necessary if the van was unoccupied; (2) her proximity to the van; and (3) how little time had passed between the van parking and Whitley approaching the van. And because it would have been reasonable to infer that Robinson knew someone was in the van, it therefore also would have been reasonable to infer that Whitley would have to use force to take the van from that person's possession. For these reasons, Robinson's Motion for Judgment of Acquittal and for a New Trial as to Count I has been denied.

Whether there was sufficient evidence to prove that Robinson intended for Whitley to take the van by deadly or violent force, which is a necessary element of the carjacking offense, is a much closer question. See 18 U.S.C. § 2119 (requiring proof of "intent to cause death or serious bodily harm"). Robinson argues that there was absolutely no evidence in the record from which a reasonable jury could find that she knew that Whitley was carrying a gun and planned to use it. The government did not respond to this argument.

It is clear from the record that there was no direct evidence that Robinson knew Whitley had a loaded gun. No gun, ammunition, or anything connected to a firearm was found either in the Camry or Robinson and Whitley's apartment. None of the video surveillance shows Whitley carrying a gun when he exited the Camry and entered the Peloton van. And the lead detective testified that Robinson told him that she had no knowledge of a firearm. [Dkt. No. 66] at 90:15-18. The evidence only shows that Whitley left his apartment with a backpack and that Hawkins testified that Whitley pulled a gun out of that backpack as Whitley was entering the Peloton van. On this record, which the government has not disputed, the Court finds that a reasonable juror could not have concluded that Robinson knew Whitley had a firearm and intended to use it when he took the Peloton van. For these reasons, Robinson's conviction on Count II has been reversed, and she has been acquitted of that charge.

Robinson, along with Whitley, argues that there was insufficient evidence to establish the interstate commerce elements of the carjacking offense, which requires that the carjacked vehicle, in this case the Peloton van, had previously crossed state lines.[4] See Jury Instruction No. 27 ("Motor Vehicle Traveled in Interstate Commerce"). The government counters this argument

---

[4] Neither Robinson nor Whitley appears to argue that there was insufficient evidence to establish the interstate commerce element for Hobbs Act robbery.

by claiming that the interstate element is established by the van having Maryland license plates. Robinson argues the Maryland plates are insufficient because they could have been fastened to the van in Virginia. That argument is unpersuasive for two reasons. First, a reasonable jury could infer that Maryland plates were attached to the van in Maryland, absent any evidence to the contrary. Second, there was uncontested evidence that Peloton regularly made deliveries throughout Virginia, D.C., and Maryland. From this evidence, a reasonable jury could conclude that at some time before August 25, 2021, the Peloton van had been driven across state lines.

2. Whitley's Motion

In addition to challenging the sufficiency of the evidence for the interstate element of the carjacking offense, Whitley independently challenges his convictions for Hobbs Act robbery, carjacking, and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).

a. Robbery

Whitley first argues that convictions for both Hobbs Act robbery and carjacking violate the Double Jeopardy Clause of the Fifth Amendment, because robbery is a lesser included offense of carjacking. Again, the government failed to address this argument. When considering a Double Jeopardy argument, the key question is whether the statutory elements of the offenses "each . . . requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). If so, "then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent," and Double Jeopardy does not occur. United States v. Ayala, 601 F.3d 256, 265 (4th Cir. 2010) (quoting United States v. Terry, 86 F.3d 353, 356 (4th Cir. 1996)).

Although Whitley claims "there is no precedent addressing the issue" of whether Hobbs Act robbery is a lesser included offense of carjacking, that is not an accurate statement. In

7

United States v. McGhee, 542 F. App'x 231 (4th Cir. 2013), a defendant appealed his convictions for conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, carjacking, and brandishing a firearm during a crime of violence, claiming, in part, that these convictions violated the Double Jeopardy Clause. Id. at 233. In an unpublished decision, the Fourth Circuit held that there was "no merit in McGhee's claim that his convictions violate the Double Jeopardy Clause, as it is evident that each charge requires proof of a fact that the other does not . . . ."[5] Id. At least one other circuit has reached the same conclusion. See, e.g., United States v. Rushing, 210 F. App'x 767, 770 (10th Cir. 2006) ("The district court correctly held that the offenses of carjacking and a Hobbs Act robbery 'require[ ] proof of a different element' . . . ." (quoting Blockburger, 284 U.S. at 304)).

Even aside from precedent, it is clear that each of the two offenses requires proof of a fact that the other does not. The carjacking offense requires a defendant to have an intent to cause death or serious bodily harm when taking the vehicle, whereas Hobbs Act robbery does not have this element. The interstate element is also different. Hobbs Act robbery requires proof that the taking impacts interstate commerce, see 18 U.S.C. § 1951(a) (requiring proof that the robbery "in any way or degree obstructs, delays, or affects commerce"), whereas the carjacking offense only requires proof that the car had previously moved in interstate commerce, see 18 U.S.C. § 2119 (requiring proof that the stolen vehicle "has been transported, shipped, or received in interstate or foreign commerce"). For these reasons, "a jury could find a defendant guilty of one offense

---

[5] Although the Fourth Circuit's opinion did not go into detail when rejecting defendant's Double Jeopardy argument, McGhee's appellate brief confirms that he argued that convictions for carjacking and Hobbs Act robbery violated the Double Jeopardy Clause. See Letter Form [sic] Pro Se Supplemental Brief, United States v. McGhee, No. 13-4104, ECF No. 26.

8

without necessarily finding him guilty of the other and vice-versa," and therefore Whitley's Double Jeopardy argument fails. Ayala, 601 F.3d at 265.

### b. Carjacking[6]

Whitley argues that the government did not prove, as is required for a carjacking conviction, that he "possessed a conditional intent to kill or seriously injure the car's driver should such violence become necessary." United States v. Bailey, 819 F.3d 92, 95 (4th Cir. 2016). Whitley claims that all the government proved was that he brandished a firearm, and that merely brandishing a firearm is insufficient to prove a specific intent to kill or seriously injure if necessary to take the van. Whitley has support from the Sixth Circuit, which in affirming a carjacking conviction held that

> in the absence of a physical touching or direct proof that the firearm was loaded, the government must establish "brandishing-plus" in order to satisfy § 2119's specific intent element. Additional evidence of intent may come in the form of circumstantial evidence that the firearm was loaded or other evidence related to the defendant's acts or statements (e.g., a threat to kill or harm) that suggests that he or she had the requisite specific intent.

United States v. Fekete, 535 F.3d 471, 480-81 (6th Cir. 2008).[7] Fekete involved a carjacking in which the defendant pointed a gun at the victim's stomach and told him to "get out of the truck." Id. at 473-74. Although the evidence presented a "very close case," the "additional evidence of intent" included circumstantial evidence that the gun was loaded and evidence that the defendant

---

[6] Whitley argues that the Court must decide this issue based solely on the Government's evidence because the Court reserved ruling on his motion to strike the evidence regarding Count II at the close of the government's case. See Fed. R. Crim. P. 29(b) ("If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved."). Whitley is mistaken because the Court did not reserve ruling on the motion; it denied it. [Dkt. No. 66] at 111:19-112:1, 214:14-15. Regardless, the government's evidence is sufficient to uphold the carjacking conviction.

[7] Whitley also relies on a now-abrogated case from the Ninth Circuit. United States v. Randolph, 93 F.3d 656, 664 (9th Cir. 1996), abrogated by Holloway v. United States, 526 U.S. 1 (1999).

9

pointed the gun at the victim's stomach while directing him to exit the vehicle, which the Court found clearly implied that if the victim did not comply, he would be injured. Id. at 481-82.

Fekete does not support Whitley's argument for acquittal for two reasons. First, the Fourth Circuit has neither adopted nor rejected the "brandishing-plus" standard. In United States v. Small, 944 F.3d 490 (4th Cir. 2019), on which Whitley relies, the Fourth Circuit addressed the "brandishing-plus" standard but simply concluded that the facts in that case did not conflict with such a standard, because the carjacking involved a physical touching, and the Sixth Circuit only discussed the "brandishing-plus" standard "in the absence of a physical touching." Small, 944 F.3d at 499-500. Second, although there was more evidence of the required intent in Fekete than here, given that Fekete had some evidence that the firearm was actually loaded during the offense, Fekete still recognized that pointing a gun directly at a victim while directing the victim to exit a vehicle—which is exactly what Whitley did—supports a finding of the required intent. Fekete, 535 F.3d at 479, 482. This conclusion is consistent with case law in the Fourth Circuit. For example, the Fourth Circuit observed in Small that "an assailant's wielding a gun provides a strong indication of intent to inflict bodily harm if met with resistance, particularly when 'the perpetrator[ ] did not merely display a gun . . . but rather pointed the gun at the [victim] in demanding car keys and other possessions.'" 944 F.3d at 499 (quoting United States v. Franklin, 545 F. App'x 243, 249 (4th Cir. 2013)). Given Hawkins' testimony that Whitley pointed a firearm directly at his torso at very close range and ordered him not to touch anything and to "get the fuck out the van," the jury had sufficient evidence to conclude that Whitley had the intent to inflict serious bodily harm or kill Hawkins if Hawkins did not comply.

To the extent Whitley relies on United States v. Bailey, that case also does not support an acquittal. Bailey found that the evidence of intent was insufficient because "no one ever saw

10

[the defendant] with a weapon"; the victim could only testify that the defendant placed a "cold and hard" item to his neck, which was "at most . . . an empty threat or an intimidating bluff." 819 F.3d at 97. Here, in contrast, Hawkins unambiguously testified that he saw Whitley point a firearm at him. Hawkins also testified that he immediately exited the van and walked towards the nearby Wells Fargo because, according to him, "if anything was to happen to me, I would want it to be on camera. . . . Just so my family would have some type of closure." On these facts, a jury could reasonably find that Whitley's actions were not an empty threat or intimidating bluff, and that Hawkins' actions evidenced that a gun had just been pointed at him. As a result, the facts of this case establish more than a "mere brandishing," and it was reasonable for the jury to find that Whitley had the required intent to kill or seriously injure Hawkins if necessary to take the van.

Even if the question of Whitley's intent were close, the Fourth Circuit has repeatedly stated that the question of intent is a question for the jury and cautioned courts to "resist invading the jury's province by transforming questions of fact into matters of law." United States v. Robinson, 855 F.3d 265, 269 (4th Cir. 2017); see also Small, 944 F.3d at 501. Given the strength of the evidence presented, the jury's verdict will not be disturbed.

    c. Section 924(c)

Whitley offers two arguments to support his motion for an acquittal for the brandishing conviction. First, he argues that no reasonable juror could find that he possessed a "firearm" as that term is defined by 18 U.S.C. § 921(a)(3), because there was insufficient evidence that the gun described by Hawkins was real and operable as opposed to a fake gun, for which § 924(c) would not impose liability. That argument is unpersuasive. Hawkins testified that Whitley pulled out a "TEC-9" that was "gun metal gray, and it had about a 20-round magazine in it." Hawkins also testified that he was familiar with weapons because he had been in the military.

11

Although he admitted that TEC-9s were not used in the military, he also testified that he was able to recognize the gun from a video game. The jury, which has the authority to make credibility findings, accepted his testimony, and absent any indication that a firearm was fake, eyewitness testimony regarding the display of a handgun is sufficient to establish a gun was, in fact, a "firearm." See United States v. McNeal, 818 F.3d 141, 149 (4th Cir. 2016) ("[T]he lay testimony of eyewitnesses that 'a gun was used in the robbery' is a sufficient basis for the jury to find that a 'firearm' was used in a bank robbery offense." (quoting United States v. Jones, 907 F.2d 456 (4th Cir. 1990))).

Second, although Whitley acknowledges that the Fourth Circuit has concluded that the testimony of a single witness can be sufficient to support a § 924(c) conviction, he argues that it should be insufficient here, as a matter of due process, given the lack of corroboration. Whitley's counsel argue that they have been unable to find any case in which a defendant was convicted of violating § 924(c) on "facts as ephemeral as those presented" in this case. This argument is rejected because a reasonable juror could have found that Whitley had a gun not only from Hawkins's testimony, but also from Hawkins's conduct, which showed him immediately getting out of the van and trying to be captured on camera so his family could know what happened to him should he be shot. A reasonable juror could find such conduct supported Hawkins's testimony that a gun had been pointed at him. Moreover, this is largely an issue of Hawkins' credibility, and a court does "not review the credibility of the witnesses when [it] evaluate[s] whether there existed sufficient evidence to support a conviction." United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997). Accordingly, the evidence was sufficient to sustain the brandishing conviction.

## III. CONCLUSION

For the foregoing reasons and those stated in open court, Robinson's Motion for Judgment of Acquittal and for a New Trial has been granted as to Count II but denied as to Count I, and Whitley's Amended Renewed Motion for Judgment of Acquittal and Memorandum in Support has been denied in all respects.

Entered this 3rd day of June, 2022.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

13